**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DEMOCRACY FORWARD FOUNDATION, | ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiff, | | |
| v. | | Case No. 17-cv-1877 (EGS/GMH) |
| U.S. DEPARTMENT OF JUSTICE, | | |
| Defendant. | | |

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned for a report and recommendation. The Democracy Forward Foundation ("Plaintiff") has brought this case against the U.S. Department of Justice ("Defendant") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Currently pending before the Court is Defendant's motion for summary judgment. Based on the entire record and the reasons below,[1] the undersigned recommends denying Defendant's Motion for Summary Judgment without prejudice.

## I.   BACKGROUND[2]

On June 2, 2017, Plaintiff submitted a FOIA request to the Department of Justice Executive Office for United States Attorneys ("EOUSA"). ECF No. 14 at 1–2. Plaintiff's FOIA request

---

[1] The relevant submissions for the purposes of the motions addressed here are (1) Plaintiff's complaint (ECF No. 1); (2) Defendant's answer (ECF No. 8); (3) Defendant's motion for summary judgment (ECF No. 10); (4) Plaintiff's opposition to Defendant's motion for summary judgment (ECF No. 12); (5) Defendant's reply in further support of its motion for summary judgment (ECF No. 13); and the parties' joint statement of material facts (ECF No. 14). Citations to page numbers reflect the pagination assigned by the Court's Electronic Case Filing system.

[2] The following factual allegations are undisputed (or deemed undisputed) unless otherwise noted. Where a fact from the statement of undisputed material facts is explicitly disputed, the undersigned generally cites the statement of undisputed material facts. In other circumstances, such as when a fact is insufficiently disputed because, for example, either the opposing party's objection fails to cite record evidence or the evidence cited does not support the objection, the undersigned cites the record evidence supporting the fact.

sought all communications between the Trump Administration Transition Team ("the Transition Team") and EOUSA during the time period between November 9, 2016 and January 21, 2017. ECF No. 14 at 2–3; ECF No. 10-3 at 4–7.  Specifically, Plaintiff sought all communications, including any attachments, sent to or from the Transition Team's Chair, Vice Chairs, Executive Committee, or staff members or representatives, and named 67 individuals who filled those roles. *Id.*  Having received no response from EOUSA, Plaintiff filed its complaint on September 13, 2017.  ECF No. 1.

After receiving Plaintiff's FOIA request, EOUSA began searching for responsive records. ECF No. 14 at 3.  Because of prior FOIA requests, EOUSA was aware of a briefing book that its staff had prepared for a December 2016 meeting with members of the Transition Team.  *Id.* at 3, 5.  On October 11, 2017, Defendant released a copy of the briefing book to Plaintiff, with some redactions.  *Id.* at 3.  Plaintiff does not challenge these redactions.

As to other potentially-responsive records, a declaration by Vinay Jolly, an attorney advisor in EOUSA's FOIA unit, explains that he determined that the Office of the Director ("Director's Office") was the only EOUSA component likely to have records responsive to Plaintiff's request because "the Director's Office would be the only component to have authority to communicate with the Transition Team."  ECF No. 10-3 at 3.  Mr. Jolly also opines that based on his experience in the FOIA unit, "no other EOUSA component would be likely to have responsive records."  *Id.*

A declaration from Norman Wong, a deputy director at EOUSA, explains the nature of the communications between EOUSA and the Transition Team and the extent of EOUSA's search for responsive documents within the Director's Office.  ECF No. 10-4.  Mr. Wong explains that he and three other employees in the Director's Office participated in the December 2016 meeting with members of the Transition Team.  *Id.* at 2.  According to Mr. Wong, direct communication with

the Transition Team was "closely coordinated through" the Justice Management Division of the Department of Justice, which facilitated the meeting and "served as an intermediary between EOUSA and the Transition Team in setting up the . . . meeting." *Id.* Mr. Wong avers that EOUSA had no direct contact with the Transition Team setting up the meeting, and that he is "unaware of any other contact between EOUSA leadership and any Transition Team Members," including those who participated in the December 2016 meeting. *Id.* Put simply, Mr. Wong believes that apart from the December 2016 meeting, "EOUSA did not communicate directly with the Transition Team." *Id.*

Mr. Wong explains that, in response to Plaintiff's request, he spoke with and exchanged emails with the other EOUSA employees who attended the December 2016 regarding "the extent of all written and oral communications that we had with the Transition Team at any point from its formation until we became aware of the instant FOIA request." *Id.* at 3. All of the meeting participants confirmed to Mr. Wong that, apart from the meeting itself, they had no contact with the Transition Team. *Id.* They also told Mr. Wong that they did not send or receive any email or other written correspondence to or from the Transition Team and that the only record responsive to Plaintiff's FOIA request was the briefing book prepared for the December 2016 meeting. *Id.* Mr. Wong opines that because he and the three other participants in the December 2016 meeting were the only EOUSA employees to have contact with the Transition Team, "we would be the appropriate custodians to have records of any communications directly between EOUSA and the Transition Team." *Id.* Finally, Mr. Wong explains that he has considered "any systems of records within the EOUSA's Director's Office likely to contain records responsive to this request" but that "[g]iven the very limited communication" between the December 2016 meeting participants and the Transition Team, "there is no other location in the Director's Office where any other records

that might be responsive to this request are likely to be located." *Id.* Accordingly, Mr. Wong says that he is unaware of "any other method or means by which a further search could be conducted, which would likely locate additional responsive records." *Id.*

Plaintiff challenges the adequacy of Defendant's search, and Defendant has moved for summary judgment on that issue. ECF No. 10-2 at 5. Defendant's motion is currently ripe for adjudication.

## II.    LEGAL STANDARD

FOIA presumes that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," and generally favors "full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting *Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)). FOIA cases are generally resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency has the burden of justifying its response to the FOIA request it received, and the federal court reviews its response *de novo*. 5 U.S.C. § 552(a)(4)(B).

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In determining the adequacy of an agency's search, the court "may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (alteration in original)

(quoting *Oglesby*, 920 F.2d at 68).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Moreover, a defendant may seek summary judgment based on searches performed after the inception of litigation in federal court.  *See, e.g.*, *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 247–48, 250 (D.D.C. 2011) (granting summary judgment for the defendant where the original FOIA request was mishandled and the search did not commence until after the filing of the complaint); *Cf. Toensing v. U.S. Dep't of Justice*, 890 F. Supp. 2d 121, 149 (D.D.C. 2012) (denying the defendant's motion for summary judgment without prejudice to renewal after the searches were modified); *People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178 n.2 (D.D.C. 2011) (noting that courts often require an agency to conduct a more thorough search before granting the plaintiff relief and terminating the case).

More generally, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In adjudicating such a motion, all reasonable inferences from the facts in the record must be made in favor of the non-moving party.  *Anderson*, 477 U.S. at 255.  To prevail, the moving party must show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To do this, it may cite the record, including "affidavits or declarations."  Fed. R. Civ. P. 56(c)(1)(A). Factual assertions made in the moving party's affidavits or declarations may be accepted as true in the absence of contrary assertions made in affidavits, declarations, or documentary evidence submitted by the non-moving party.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

## III.    DISCUSSION

Plaintiff argues that Defendant's search was inadequate in two respects.  First, Plaintiff contends Defendant should not have confined its search to the Director's Office.  As explained below, this argument is unavailing because the Jolly and Wong affidavits adequately explain the EOUSA's determination that the Director's Office was the only component likely to have responsive records.  Plaintiff fares better on its second contention that Defendant's search was inadequate because it "did not conduct any electronic searches reasonably calculated to lead to responsive documents."  ECF No. 12 at 16.  As explained below, Defendant was obligated either to search the records of the employees who participated in the December 2016 for communications with any of the individuals named in Plaintiff's FOIA request or to explain with specificity why such a search would be overly burdensome.  Because it did neither, the Court should deny Defendant's motion for summary judgment.

### A.    Limiting Search to the Director's Office

An agency may prove the adequacy of its search through the submission of "sufficiently detailed affidavits to allow [the court] to review the adequacy of [the] search." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995); *see also Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 152 (D.D.C. 2013) (explaining that a declaration must include "sufficient information for the Court to conclude that [the agency's] search methods were 'reasonably calculated to uncover all relevant documents'" (quoting *Morley v. CIA* , 508 F.3d 1108, 1114 (D.C. Cir. 2007) (emphasis omitted)).

Plaintiff argues that Mr. Jolly's affidavit does not support the EOUSA's determination that the Director's Office is the only component likely to have records responsive to Plaintiff's request because Mr. Jolly's tenure at the agency has only included one other presidential transition, and

there is no evidence that "he was involved in searching for records sought concerning communi-cations with any prior Presidential transition team, which in any event would have involved com-pletely different parties than the Trump-Pence Transition Team."  ECF No. 12 at 14.

FOIA does not require such a crabbed understanding of a declarant's knowledge and ex-perience.  A FOIA declarant need only attest to his personal knowledge "of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'"  *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (alteration in original) (quoting *Mad-ison Mech., Inc. v. NASA*, No. 99-cv-2854, 2003 WL 1477014, at *6 (D.D.C. Mar. 20, 2003)); *see also Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007) ("The declaration of an agency official who is knowledgeable about the way in which information is processed and is familiar with the documents at issue satisfies the personal knowledge require-ment.").  Plaintiff cites no authority suggesting that FOIA declarants must have prior experience dealing with a nearly-identical records request for their affidavits to carry weight.  Given the varied nature of the FOIA requests agencies receive, such a requirement would frequently be impossible to satisfy.  *Compare Cmty. Ass'n for Restoration of the Env't, Inc. v. U.S. EPA*, 36 F. Supp. 3d 1039, 1041 (E.D. Wash. 2014) (seeking documents related to a study into the relationship between dairies and drinking water pollution), *with Ground Saucer Watch*, 692 F.2d at 772 n.7 (requesting "[a]ll documents in the possession or under the control of the CIA . . . relating to Unidentified Flying Objects (UFOs) and the UFO Phenomena" (alteration in original)).

Here, Mr. Jolly's affidavit demonstrates that he was well qualified to determine where to search for responsive documents.  He explains that he is an attorney advisor responsible for re-sponding to FOIA requests and locating responsive records and that his declaration is "based upon [his] review of the official files and records of EOUSA, [his] own personal knowledge, and

knowledge [he] acquired . . . through the performance of [his] official duties." ECF No. 10-3 at 1–2. He avers that "[d]ue to the nature of [his] official duties, [he is] familiar with the procedures followed by [EOUSA] in responding to" Plaintiff's FOIA request. *Id.* at 2. Nothing more is required to qualify Mr. Jolly as a sufficient declarant in this FOIA case. *See Barnard*, 531 F. Supp. 2d at 138; *Carter, Fullerton & Hayes LLC,* 520 F. Supp. 2d at 146.

Moreover, Mr. Jolly's affidavit provides a reasonable basis for his determination that the Director's Office was the only EOUSA component likely to have records responsive to Plaintiff's request. Nothing more is required. An agency need only demonstrate why it was reasonably likely to locate responsive materials in the places searched but not in others. *See Judicial Watch, Inc. v. U.S. Dep't of State*, No. CV 15-0688 (RC), 2017 WL 456417, at *6 (D.D.C. Feb. 2, 2017) (finding an agency's determination of the offices to be searched was adequate where it "determine[d] which offices [we]re reasonably likely to contain responsive material based on 'a familiarity with the holdings of the Department's record systems, applicable record disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions'"); *Schrecker v. U.S. Dep't of Justice,* 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd,* 349 F.3d 657 (D.C. Cir. 2003) (finding the agency's declarations adequately described rationale for searching certain offices by stating that those offices had the "greatest possibility of containing responsive documents because the investigations [at issue] began there or individuals who worked on the investigations had worked in these offices"). Mr. Jolly explains that "[b]ased on [his] nine years of experience as an Attorney Advisor in the FOIA/PA Unit," he determined the Director's Office was the only EOUSA component where responsive records were likely to be found "since the Director's Office would be the only component to have authority to communicate with the Transition Team." ECF No. 10-3 at 3. This accords with Mr. Wong's explanation that he and the

other participants in the December 2016 meeting were the only EOUSA employees to have any contact with the Transition Team and that they were therefore "the appropriate custodians . . . of any records of any communications directly between EOUSA and the Transition Team." ECF No. 10-4 at 2–3. This is an adequate explanation for the decision to confine EOUSA's search for responsive records to the Director's Office, and particularly to the records of the employees who participated in the December 2016 meeting. *See Judicial Watch*, 2017 WL 456417, at *6; *Schrecker,* 217 F. Supp. 2d at 35.

Plaintiff argues that EOUSA's determination to search only the Director's Office was inadequate because it did not account for the possibility that employees in other EOUSA components might have had unauthorized communications with the Transition Team and that the Transition Team members could have sent emails to unauthorized recipients. ECF No. 12 at 14–15. However, where, as here, a FOIA requester challenges the adequacy of an agency's search, "the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs*, 926 F.2d at 1201. An agency may rely on its standard procedures in determining where to search, and it is not required "to make hopeless and wasteful efforts to locate" documents that would not "have been created in the normal course." *Id.* Moreover, a plaintiff may not rebut an agency's determination to search only those components it believes are reasonably likely to have responsive documents with "[m]ere speculation that as yet uncovered documents may exist." *Id.* As discussed above, the affidavits of Mr. Wong and Mr. Jolly demonstrate that it was reasonable for EOUSA to determine that the Director's Office is the only component likely to have documents responsive to Plaintiff's request. Plaintiff's unsupported speculation that unauthorized emails might exist elsewhere in the agency is insufficient to rebut the reasonableness of that determination.

Finally, Plaintiff's argument that EOUSA construed its FOIA request too narrowly by searching only for "authorized" communications and "ignor[ing] that [the] FOIA request[] seeks both *incoming and outgoing* communications *to and from* all of EOUSA," also fails. *See* ECF No. 12 at 13, 17–18. There is no evidence that Defendant narrowly interpreted Plaintiff's request. Mr. Wong's declaration explains that "[a]s the most senior leaders of EOUSA," he and the other December 2016 meeting participants "would have been the only EOUSA individuals to communicate with any Transition Team members." ECF No. 10-4 at 2. Mr. Wong's affidavit indicates that, if they existed, these communications would include "any email or other written correspondence *to or from* any Transition Team member during the requested timeframe." *Id.* at 3 (emphasis added). Accordingly, Defendant has established that it was reasonable for it to confine its search to the Director's Office and to the records of the participants in the December 2016 meeting.

### B.      Failure to Search Emails or Written Correspondence in the Director's Office

Plaintiff also contends that Defendant's search was inadequate because it should have searched the email records of employees in the Director's Office using the list of names included in Plaintiff's FOIA request rather than simply relying on Mr. Wong's conversations and emails with participants in the December 2016 meeting. ECF No. 12 at 11–14. On this score, Plaintiff is correct.

Defendant argues that Mr. Wong's communications with the other participants of the December 2016 meeting constitutes an adequate search because those EOUSA employees denied having sent or received any email or other written correspondence with members of the transition team and Mr. Wong averred that he was unaware of "any other method or means by which a further search could be conducted, which would be likely to locate additional responsive records." ECF No. 10-2 at 9–11. Defendant cites *James Madison Project v. Dep't of Justice*, 267 F. Supp. 3d 154

(D.D.C. 2017) for the proposition that a "asking the relevant custodians whether they ha[ve] any responsive records and then searching the locations they identif[y]" is an adequate search. ECF No. 10-2 at 11. That is true so far as it goes, but the principle does not support finding an agency has conducted an adequate search where, as here, it appears to have failed to search locations reasonably likely to contain responsive records.

In *James Madison Project*, the court found that an agency conducted an adequate search when it "identif[ied] the individuals likely to have responsive records and interview[ed] them to determine where all records relevant to [the request] would be located and then review[ed] each of those records individually." *James Madison Project*, 267 F. Supp. 3d at 160. While the court in that case rejected the plaintiff's contention that an agency is always required to use search terms for requests involving electronic records, it also observed that "[a]n agency cannot fail to search at all based upon alleged personal knowledge." *Id.* at 160–61; *see also Toensing v. U.S. Dep't of Justice*, 890 F. Supp. 2d 121, 143 (D.D.C. 2012) (finding an agency's failure to perform a search based on the "professed personal knowledge that no responsive records exist, cannot possibly constitute an adequate search"). Here, Defendant appears to have done just that. As discussed above, Defendant's affidavits establish an adequate basis for it to have narrowed its search to the Director's Office, and specifically to the records of the employees who participated in the December 2016 meeting. However, Mr. Wong's discussions and correspondence with the other meeting participants are no substitute for actually searching those employees' records.

It is not clear whether or not Mr. Wong and the other EOUSA employees who participated in the December 2016 meeting performed any search of their own records—including their electronic records—before attesting that they did not possess any responsive documents. Mr. Wong

11

states in his affidavit that he spoke with and exchanged emails with the other EOUSA meeting participants, and they all confirmed to him that:

> (1) they had no contact with the Transition Team during the requested timeframe (except with Ms. Bash, Mr. Tenpas, and Mr. Benzckowski at the December 2 meeting), (2) they neither sent nor received any email or other written correspondence to or from any Transition Team member during the requested timeframe . . . , and (3) the only responsive record in our office is the Briefing Book.

ECF No. 10-4 at 3.  It is unclear from this description whether the meeting participants made these representations to Mr. Wong after having searched their own records from the relevant timeframe, or whether they made them merely from "professed personal knowledge." *Toensing*, 890 F. Supp. 2d at 143.  Indeed, Defendant's assertion that requiring EOUSA to search its employees' email and electronic records using the list of names of transition team members would be burdensome suggests that these employees have not already conducted a search of their records.

Defendant argues that conducting an electronic search using the list of names Plaintiff provided in its request would be overly burdensome because the list does not include the transition team members' email addresses and would therefore "capture emails that do not constitute communications between the Transition Team and employees of EOUSA."  ECF No. 13 at 5.  However, Defendant has not submitted any evidence demonstrating that searching its employees' email would be overly burdensome.  Agencies bear the burden of "provid[ing] sufficient explanation as to why such a search would be unreasonably burdensome."  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995); *see also Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (finding that "without more specification" an agency failed to establish the search would be unduly burdensome where it "merely claim[ed] that searching . . . 25,000 paper files would be 'costly and take many hours to complete,' indicating that the [agency] would need to send the files from Texas to California, or employees from California to Texas, to complete the search"); *Church of Scientology of Calif. v. IRS*, 792 F.2d 146, 151 (D.C.

Cir. 1986) (explaining that where an agency alleges a search would be overly burdensome, it should "identify the searched files and describe at least generally the structure of the agency's file system which makes further search difficult").

To be sure, conducting a search using the transition team members' names may well turn up some nonresponsive documents, since many of the transition team members on the list were also public officials during the relevant timeframe. Yet, FOIA searches frequently require an agency to sort out which documents are responsive and which are not. *See, e.g.*, *Talbot v. U.S. Dep't of State*, 373 F. Supp. 3d 212, 223 (D.D.C. 2018) (describing an agency's database search using a person's name and pseudonyms, which yielded 56 records, all of which the agency deemed nonresponsive), *appeal dismissed*, No. 19-5003, 2019 WL 2149778 (D.C. Cir. May 15, 2019); *Energy Future Coal. v. Office of Mgmt.*, 200 F. Supp. 3d 154, 161 (D.D.C. 2016) (describing negotiations between the agency and the requester to narrow a request to limit false positive re-sults). Here, the declarations of Mr. Jolly and Mr. Wong make no mention at all of the burden that conducting such a search would entail. Accordingly, the Court should deny Defendant's motion for summary judgment and order Defendant to supplement the record, either by: (a) searching the email and electronic records of the Director's Office personnel who participated in the December 2016 meeting, using the names provided in Plaintiff's FOIA request; (b) clarifying that the em-ployees have already conducted such a search; or (c) submitting an affidavit detailing with speci-ficity why the search would be overly burdensome. *See Discepolo v. U.S. Dep't of Justice*, No. 16-CV-2351 (DLF/GMH), 2018 WL 504655, at *12 (D.D.C. Jan. 19, 2018) (requiring an agency that failed to search an email account to "supplement its declaration to fill this gap in its demon-stration of the adequacy of its search, either by searching [the email account] or by explaining why such a search is unnecessary"), *report and recommendation adopted,* No. CV 16-2351

(DLF/GMH), 2018 WL 5024921 (D.D.C. May 8, 2018), *reconsideration denied,* No. 16-CV-2351 (DLF), 2018 WL 6620465 (D.D.C. Nov. 2, 2018); *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 515 (D.C. Cir. 2011) (remanding case and requiring defendant to provide "further clarification . . . about the seeming gaps" in its search); *Toensing*, 890 F. Supp. 2d at 149 (denying without prejudice the defendant's motion for summary judgment to allow the agency to submit further evidence regarding its search).

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 10) be **DENIED WITHOUT PREJUDICE**.

\*       \*       \*       \*       \*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).


Date:  August 29, 2019

                                                _____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE