**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DEMOCRACY FORWARD FOUNDATION,

        Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 17-1877
(EGS/GMH)

**<u>MEMORANDUM OPINION</u>**

I.    **Introduction**

Plaintiff Democracy Forward Foundation ("Democracy Forward") has sued Defendant U.S. Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain communications between the Trump Administration Transition Team ("the Transition Team") and the Executive Office for United States Attorneys ("EOUSA"). *See* Compl., ECF No. 1 ¶ 26.

On January 19, 2018, DOJ moved for summary judgment on the issue of the adequacy of its search for responsive records. *See* Def.'s Mot. Summ. J., ECF No. 10; Mem. P. & A. in Supp. of

Def.'s Mot. Summ. J., ECF No. 10-2 at 4.[1] On June 7, 2018, the matter was referred to Magistrate Judge Harvey for a Report and Recommendation ("R. & R."). Magistrate Judge Harvey has since issued an R. & R. recommending that the Court deny DOJ's Motion for Summary Judgment without prejudice. *See* R. &. R., ECF No. 16 at 14.

Pending before the Court are Democracy Forward's Objections to Magistrate Judge Harvey's R. & R., *see* Pl.'s Objs. Magistrate Judge's Proposed Findings & Recommendations ("Pl.'s Objs."), ECF No. 18; and DOJ's Objections to Magistrate Judge Harvey's R. & R., *see* Def.'s Objs. Magistrate Judge's R. & R. ("Def.'s Objs."), ECF No. 19. Upon careful consideration of the R. & R., the objections, oppositions, and reply thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the R. & R, *see* ECF No. 16; and **DENIES** DOJ's Motion for Summary Judgment, *see* ECF No. 10.

## II.  Background

### A. Factual

On June 2, 2017, Democracy Forward submitted a FOIA request to EOUSA seeking all communications sent to or from 67 named members of the Transition Team between November 9, 2016 and

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

January 21, 2017. *See* Def.'s Statement of Material Facts as to
Which There is No Genuine Issue & Pl.'s Statement of Genuine
Issues in Opp'n to Def.'s Statement of Material Facts ("SOMF"),
ECF No. 14 ¶ 1. Although EOUSA acknowledged receipt of this
request on June 7, 2017, it did not at that time provide any
substantive response. *See id.* ¶ 3. Democracy Forward thus filed
this lawsuit on September 13, 2017. *Id.* ¶ 4.

At some point after receiving the FOIA request, EOUSA began
to search for responsive records. *Id.* ¶ 6 (citing Jolly Decl.,
ECF No. 10-3 ¶ 7). The agency's search efforts are detailed by a
declaration submitted by Mr. Vinay Jolly ("Mr. Jolly"), an
attorney advisor in EOUSA's FOIA unit. Mr. Jolly explains that
the agency located one responsive record based on searches it
conducted pursuant to other FOIA requests: the "Briefing Book
Transition Team." *Id.* ¶ 7 (citing Jolly Decl., ECF No. 10-3 ¶
7). On October 13, 2017, after this litigation began, EOUSA
released 129 pages of the Briefing Book in full and 20 pages in
part to Democracy Forward. *Id.* ¶ 8 (citing Jolly Decl., ECF No.
10-3 ¶¶ 6, 7).

In the meantime, EOUSA continued to search for responsive
records. *Id.* ¶ 9. Mr. Jolly avers that the Office of the
Director ("Director's Office") was the only EOUSA component
likely to have responsive records because "the Director's Office
would be the only component to have authority to communicate

3

with the Transition Team." Jolly Decl., ECF No. 10-3 ¶¶ 7-8. Mr.
Jolly explains that he made this determination based on his nine
years of experience in the FOIA unit. SOMF, ECF No. 14 ¶¶ 10-12
(citing Jolly Decl., ECF No. 10-3 ¶ 8). EOUSA thereafter
forwarded Democracy Forward's request to the Director's Office.
*Id.* ¶ 10.

EOUSA describes its search efforts in the Director's Office
with a declaration from Mr. Norman Wong ("Mr. Wong"), the Deputy
Director and Counsel to the Director at EOUSA. Mr. Wong explains
that DOJ's Justice Management Division ("JMD") facilitated a
meeting between EOUSA employees Mr. Wong, Director Monty
Wilkinson ("Mr. Wilkinson"), Deputy Director Suzanne L. Bell
("Ms. Bell"), and Chief Financial Officer Jonathan Pelletier
("Mr. Pelletier") and members of the Transition Team on December
2, 2016. *Id.* ¶ 14 (citing Wong Decl., ECF No. 10-4 ¶ 4). Mr.
Wong explains that JMD "closely coordinated" communications
between EOUSA and the Transition Team, including setting up the
December 2016 meeting. *Id.* ¶¶ 14-17 (citing Wong Decl., ECF No.
10-4 ¶ 4). He claims that he is "unaware of any other contact
between EOUSA leadership and any Transition Team Members," and
that, apart from the December 2016 meeting, "EOUSA did not
communicate directly with the Transition Team." Wong Decl., ECF
No. 10-4 ¶ 4.

Upon receiving Democracy Forward's FOIA request, Mr. Wong determined that he, Mr. Wilkinson, Ms. Bell, and Mr. Pelletier were "the only custodians likely to have responsive records." SOMF, ECF No. 14 ¶ 19 (citing Wong Decl., ECF No. 10-4 ¶ 4). He then spoke with and exchanged emails with those individuals to inquire about "the extent of all written and oral communications that [they] had with the Transition Team at any point from its formation until [they] became aware of the instant FOIA request." *Id.* ¶ 20 (citing Wong Decl., ECF No. 10-4 ¶ 5). Each custodian confirmed that "(1) they had no contact with the Transition Team during the requested timeframe (except . . . at the December 2 meeting), (2) they neither sent nor received any email or other written correspondence to or from any Transition Team member during the requested timeframe . . . , and (3) the only responsive record in [EOUSA's] office is the Briefing Book." *Id.* ¶ 21 (citing Wong Decl., ECF No. 10-4 ¶ 5). Mr. Wong also avers that "there is no other location in the Director's Office where any other records that might be responsive to this request are likely to be located." *Id.* ¶ 23 (citing Wong Decl., ECF No. 10-4 ¶ 6).

**B. Procedural**

On January 19, 2018, DOJ moved for summary judgment on the issue of the adequacy of its search. *See* Def.'s Mot. Summ. J., ECF No. 10; Mem. P. & A. in Supp. of Def.'s Mot. Summ. J., ECF

No. 10-2 at 4. Democracy Forward filed its brief in opposition on February 27, 2018, *see* Pl.'s Opp'n Def.'s Mot. Summ. J., ECF No. 12; and DOJ filed a reply on March 22, 2018, *see* Reply in Supp. of Def.'s Mot. Summ. J., ECF No. 13.

The Court referred DOJ's Motion for Summary Judgment to Magistrate Judge Harvey for an R. & R. *See* Minute Order (July 5, 2018). On August 29, 2019, Magistrate Judge Harvey issued his R. & R. recommending that the Court deny DOJ's Motion for Summary Judgment. *See* R. & R., ECF No. 16 at 14.

On September 19, 2019, both Democracy Forward and DOJ filed objections to the R. & R. *See* Pl.'s Objs., ECF No. 18; Def.'s Objs., ECF No. 19. Democracy Forward submitted its response in opposition to DOJ's objections on October 3, 2019, *see* Pl.'s Opp'n Def.'s Objs. ("Pl.'s Opp'n"), ECF No. 20; and DOJ filed its response in opposition to Democracy Forward's objections the same day, *see* Def.'s Resp. Pl.'s Objs. Magistrate Judge's R. & R. ("Def.'s Opp'n"), ECF No. 21. Democracy Forward filed its reply in support of its objections on October 10, 2019. *See* Pl.'s Reply in Supp. of Objs. ("Pl.'s Reply"), ECF No. 22. The objections and the motion are ripe and ready for adjudication.

## III. Legal Standard

### A. Objections to a Magistrate Judge's R. & R.

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has

entered a recommended disposition. Fed. R. Civ. P. 72(b)(2). A
district court "may accept, reject, or modify the recommended
disposition." *Id.* 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C)
("A judge of the court may accept, reject, or modify, in whole
or in part, the findings or recommendations made by the
magistrate judge."). A district court "must determine de novo
any part of the magistrate judge's disposition that has been
properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however,
the party makes only conclusory or general objections, or simply
reiterates his original arguments, the Court reviews the [R. &
R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d
86, 88 (D.D.C. 2013) (citation omitted). "Under the clearly
erroneous standard, the magistrate judge's decision is entitled
to great deference and is clearly erroneous only if on the
entire evidence the court is left with the definite and firm
conviction that a mistake has been committed." *Buie v. Dist. of
Columbia*, No. CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C.
Sept. 12, 2019) (citation and internal quotation marks omitted).

Objections must "specifically identify the portions of the
proposed findings and recommendations to which objection is made
and the basis for the objection." LCvR 72.3(b). "[O]bjections
which merely rehash an argument presented and considered by the
magistrate judge are not properly objected to and are therefore
not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp.

2d 1, 8 (D.D.C. 2013) (citation and internal quotation marks
omitted). The Court reviews Plaintiff's and Defendant's
objections *de novo*.

**B. Summary Judgment**

FOIA is based on the recognition that an informed citizenry
is "vital to the functioning of a democratic society, needed to
check against corruption and to hold the governors accountable
to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S.
214, 242 (1978). It was enacted to "pierce the veil of
administrative secrecy and to open agency action to the light of
public scrutiny," and it favors "full agency disclosure." *Dep't
of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting
*Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir.
1974)). FOIA cases are usually resolved on motions for summary
judgment. *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521,
527 (D.C. Cir. 2011). The agency has the burden of justifying
its response to the FOIA request it received, and the court
reviews its response *de novo*. 5 U.S.C. § 552(a)(4)(B).

Generally, summary judgment is warranted "if the movant
shows [by affidavit or other admissible evidence] that there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
A party opposing a summary judgment motion must show that a
genuine factual issue exists by "(A) citing to particular parts

8

of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

### C. Adequate Search

To prevail on summary judgment in a FOIA case, the agency must show that it conducted an adequate search for records responsive to the plaintiff's FOIA request. *See Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). To make a *prima facie* showing of adequacy, the agency must demonstrate that it made a good-faith effort to search for responsive records "using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)

(adequacy depends on the "appropriateness of the methods used" rather than the "fruits of the search").

The agency may meet its burden by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reps. Comm.*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at 68). Such affidavits "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). However, "[a]t a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)).

"The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request' and 'no indication of what each [component's]

search specifically yielded.'" *Otero v. DOJ*, 292 F. Supp. 3d 245, 251 (D.D.C. 2018) (quoting *Reps. Comm.*, 877 F.3d at 402).

## IV.  Analysis

### A. EOUSA Properly Confined Its Search for Responsive Records

To determine whether an agency conducted an adequate search for responsive records, the Court "must first ascertain the scope of the request itself." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). The agency must "read [the request] as drafted," *Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 271 F. Supp. 3d 241, 255-56 (D.D.C. 2017) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)); and "may not narrow the scope of a FOIA request to exclude materials reasonably within the description provided by the requester," *id.* (citing *Nation Mag.*, 71 F.3d at 889-90, 892).

Democracy Forward first objects that DOJ "improperly construed Plaintiff's search as limited to 'authorized' communications between the Transition Team and EOUSA." Pl.'s Objs., ECF No. 18 at 4-5. The organization clarifies that it requested "*all* incoming and outgoing communications between the named members of the Transition Team and all of EOUSA." Pl.'s Objs., ECF No. 18 at 5. This request included unauthorized communications, which "could well be the *most* informative and

revealing records concerning the relationship between the Transition Team and EOUSA." *Id.*

Democracy Forward raises this objection in the context of its challenge to the adequacy of EOUSA's search, and so "the factual question it raises is whether the search was reasonably calculated to discover the requested documents." *SafeCard Servs.*, 926 F.2d at 1201. EOUSA's search meets this standard. The agency considered the scope of Democracy Forward's request— all communications between the named Transition Team members and EOUSA—and reasonably determined that the only records likely to exist are authorized communications. *See* Def.'s Opp'n, ECF No. 21 at 3. Indeed, DOJ admits in its briefing that EOUSA understood that it was to search for all communications. *See* Def.'s Opp'n, ECF No. 21 at 3. The briefing, bolstered by Mr. Jolly and Mr. Wong's affidavits, adequately explains that the agency found it likely that only authorized communications exist and confined its search accordingly. *See* R. & R., ECF No. 16 at 6-9; Jolly Decl., ECF No. 10-3 ¶¶ 7-9 (basing this determination on his nine years of experience); Wong Decl., ECF No. 10-4 ¶¶ 4-6 (reasoning based on his knowledge that only participants in the December 2016 meeting had any contact with the Transition Team).

The cases Democracy Forward cites in its briefing are distinguishable. In *Urban Air Initiative*, the affidavits did not

support a conclusion that the agency conducted an adequate search because they did "not aver that no other custodians were likely to possess responsive documents." *Urb. Air Initiative, Inc.*, 271 F. Supp. 3d at 256 (citing *Oglesby*, 920 F.2d at 68). By contrast, here, the affidavits state that only authorized communications and no other communications are likely to exist. Mr. Wong makes clear that he, Mr. Wilkinson, Ms. Bell, and Mr. Pelletier "would have been the *only* EOUSA individuals to communicate with any Transition Team members" and that "[o]ther than at [the December 2016] meeting, EOUSA did not communicate directly with the Transition Team." Wong Decl., ECF No. 10-4 ¶ 4 (emphasis added). Mr. Jolly explains the same, averring that "no . . . EOUSA component" other than the Director's Office "would be likely to have responsive records." Jolly Decl., ECF No. 10-3 ¶ 8.

*Utahamerican Energy, Inc. v. Mine Safety & Health Admin.*, 725 F. Supp. 2d 78 (D.D.C. 2010) provides even less support. There, the court held that the agency's search was inadequate because the agency "centered the search around [other] requests for documents, and not around [the plaintiff]'s FOIA request." 725 F. Supp. 2d at 82. Since Democracy Forward does not allege that EOUSA conducted a search responsive to FOIA requests other than its own, *see generally* Pl.'s Objs., ECF No. 18; this case is not instructive.

Moreover, FOIA does not require an agency to "make hopeless and wasteful efforts to locate" documents that would not "have been created in the normal course." *SafeCard Servs.*, 926 F.2d at 1201. Unauthorized communications would not have been created in the normal course. *See* Wong Decl., ECF No. 10-4 ¶¶ 4-6. Democracy Forward offers only "[m]ere speculation that as yet uncovered documents may exist." *SafeCard Servs.*, 926 F.2d at 1201. It reasons that unauthorized communications between EOUSA and the Transition Team must exist because: "multiple federal law enforcement agencies were investigating President Trump and his associates before, during, and after the transition"; President "Trump attempted to influence those investigations"; "President Trump had recently fired 46 U.S. Attorneys, including one investigating a cabinet official"; and "congressional investigators were simultaneously attempting to obtain information about illicit contacts." Pl.'s Reply, ECF No. 22 at 2 (citations omitted). Whatever evidence there may be of other illegal activity, that evidence does not provide enough support for the charge that EOUSA possesses unauthorized communications—particularly in the face of EOUSA's declarations to the contrary. *See Light v. Dep't of Just.*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) ("An agency's declarations are accorded 'a presumption of good faith, which cannot be rebutted by purely

14

speculative claims about the existence and discoverability of other documents.'" (quoting *SafeCard Servs.*, 926 F.2d at 1200)).

Democracy Forward also objects to Magistrate Judge Harvey's conclusion that EOUSA properly cabined its search to the individuals who participated in the December 2016 meeting. *See* Pl.'s Objs., ECF No. 18 at 6-8. It contends that EOUSA "'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" *Id.* at 7-8 (quoting *Nation Mag.*, 71 F.3d at 890). And other systems are likely to have responsive records, it continues, because "[g]overnment officials do not always stay within the bounds of their lawful authority, particularly with respect to the rules governing authorized and unauthorized communications." Pl.'s Objs., ECF No. 18 at 6-7.

The Court disagrees. First, there is significant caselaw suggesting that "in the absence of clear evidence to the contrary, courts presume that [government officials] have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926). Second, FOIA declarations "are accorded a presumption of good faith" regardless of the underlying government conduct. *SafeCard Servs.*, 926 F.2d at 1200. Because Democracy Forward does not cite any caselaw to support its position and does not allege that EOUSA acted in bad faith, the Court rejects this argument.

At base, Democracy Forward speculates—based on other actions of the Transition Team and other investigations—that there may be unauthorized communications between EOUSA and certain members of the Transition Team. But under FOIA, the Court assesses whether the agency's search "can be reasonably expected to produce the information requested" and will prohibit the agency from "limit[ing] its search to only one record system if there are others that are likely to turn up the information requested." *Nation Mag.*, 71 F.3d at 890 (citations omitted). Democracy Forward has not shown that EOUSA's search was unreasonably limited or that other EOUSA employees were likely to have responsive records. For these reasons, the Court agrees with Magistrate Judge Harvey that EOUSA properly confined its search to authorized communications between the named members of the Transition Team and the individuals in the Director's Office who participated in the December 2016 meeting.

### B. EOUSA's Failure to Search the December 2016 Meeting Participants' Records Was Unreasonable

"[R]easonableness is the hallmark of an adequate FOIA search, and must be decided on the facts of the case." *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (citing *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). FOIA does not require that the agency's search "take any particular form." *Toensing v. U.S. Dep't of*

*Just.*, 890 F. Supp. 2d 121, 144 (D.D.C. 2012). "However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

DOJ objects to Magistrate Judge Harvey's conclusion that EOUSA's search was inadequate for its failure to search the email records and other written correspondence of the December 2016 meeting participants. Def.'s Objs., ECF No. 19 at 5-10. The agency refers to Mr. Wong's declaration, which explains that he "personally spoke with and exchanged emails with" the other December 2016 meeting participants and, based on those conversations, determined that "they neither sent nor received any email or other written correspondence to or from any Transition Team member during the requested timeframe." *Id.* at 6 (citing Wong Decl., ECF No. 10-4 ¶ 5). In other words, DOJ argues that Mr. Wong's conversations with the other meeting participants constitutes a search and that the search was adequate because "it was not reasonable to believe that responsive records existed in those email accounts." *Id.* at 7 (citing Wong Decl., ECF No. 10-4 ¶ 6).

The Court agrees with Magistrate Judge Harvey that Mr. Wong's conversations with the other likely custodians of responsive records "are no substitute for actually searching those employees' records." R. & R., ECF No. 16 at 11. The facts

17

here are analogous to those in *Toensing*, where the court held
the "search" to be "clearly inadequate" when the declarant
acknowledged that "she spent '[n]o additional search time'
because she and her colleagues 'kn[ew] there were no
tapes/transcripts responsive to the request.'" *Toensing*, 890 F.
Supp. 2d at 143. Here, Mr. Wong attests that he did not conduct
any further searches after discussing the matter with the other
December 2016 meeting participants. *See* Wong Decl., ECF No. 10-4
¶ 6. Mr. Wong at no point claims that he or any of the other
meeting participants performed any search of their own records
to support their representations. *See generally id.* ¶¶ 4-6.
Although the Court presumes good faith here, FOIA still requires
that the agency conduct some search and forbids it from relying
on "professed personal knowledge that no responsive records
exist." *Toensing*, 890 F. Supp. 2d at 143.

The cases DOJ cites do not counsel differently because in
each case, the agency actually reviewed its records. In *James
Madison Project v. Dep't of Justice*, 267 F. Supp. 3d 154 (D.D.C.
2017), the court held the search to be adequate because the
agency "identif[ied] the individuals likely to have responsive
records," "interview[ed] them to determine where all records
relevant . . . would be located," and "review[ed] each of those
records individually." 267 F. Supp. 3d at 160. In *Schrecker v.
U.S. Dep't of Justice*, 217 F. Supp. 2d 29 (D.D.C. 2002), *aff'd*,

349 F.3d 657 (D.C. Cir. 2003), the court accepted the search as adequate where the agency searched the three records systems with "the greatest possibility of containing responsive documents." 217 F. Supp. 2d at 35. And in *American Chemistry Council, Inc. v. U.S. Dep't of Health & Human Services*, 953 F. Supp. 2d 120 (D.D.C. 2013) as well as *Walston v. U.S. Dep't of Defense*, 297 F. Supp. 3d 74 (D.D.C. 2018), the courts concluded that the agencies performed adequate searches because the "search of an alternate source" suggested by the plaintiffs "would be duplicative of a search that ha[d] already been conducted." *Am. Chemistry Council, Inc.*, 953 F. Supp. 2d at 127; *see Walston*, 297 F. Supp. 3d at 78-79.

"Although agencies have discretion in crafting their searches," *Walston*, 297 F. Supp. 3d at 79; they cannot decline to actually search for responsive records, *see Morley*, 508 F.3d at 1114. Agencies, of course, may use interviews with likely custodians to determine what search methods are "reasonably calculated to discover the requested documents." *SafeCard Servs.*, 926 F.2d at 1201. However, they may not use those interviews to avoid searching their records altogether. *Toensing*, 890 F. Supp. 2d at 143. The Court therefore concludes that EOUSA did not perform an adequate search because it failed to search the email and other records of the December 2016 meeting participants.

**C. The Court Orders DOJ to Supplement the Record**

In a footnote, Democracy Forward objects to Magistrate Judge Harvey's recommendation that the Court permit DOJ to supplement the record by explaining why any further search would be burdensome. *See* Pl.'s Objs., ECF No. 18 at 3-4 n.1. The Court possesses the authority to order that a record be supplemented. *See Discepolo v. U.S. Dep't of Just.*, No. 16-CV-2351 (DLF/GMH), 2018 WL 504655, at *12 (D.D.C. Jan. 19, 2018) (requiring an agency that failed to search an email account to "supplement its declaration to fill this gap in its demonstration of the adequacy of its search, either by searching [the email account] or by explaining why such a search is unnecessary"), *report and recommendation adopted*, No. CV 16-2351 (DLF/GMH), 2018 WL 5024921 (D.D.C. May 8, 2018), *reconsideration denied*, No. 16-CV-2351 (DLF), 2018 WL 6620465 (D.D.C. Nov. 2, 2018); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 515 (D.C. Cir. 2011) (remanding case and requiring defendant to provide "further clarification . . . about the seeming gaps" in its search). This supplementation is particularly appropriate here as DOJ explained in its briefing that a search through the four meeting participants' email records may be burdensome. *See* Def.'s Objs., ECF No. 19 at 9-10 (explaining that the agency will have "to expend resources to comb through for responsiveness"); *see id.* at 10 (describing

that a search for communications with former Attorney General

Jeff Sessions is likely to result in a large number of

nonresponsive "hits" because he was "the ultimate boss of EOUSA

during the relevant timeframe").

## V.    Conclusion

For the foregoing reasons, the Court **ADOPTS** Magistrate

Judge Harvey's R. & R., ECF No. 16; and **DENIES** DOJ's Motion for

Summary Judgment as to the adequacy of EOUSA's search, ECF No.

10.

The Court orders DOJ to supplement the record by: (a)

searching the email and other records of the four individuals in

the Director's Office who participated in the December 2016

meeting with the Transition Team, using the names from Democracy

Forward's FOIA request; (b) submitting an affidavit explaining

that those individuals have already conducted those searches; or

(c) submitting an affidavit detailing with specificity why the

search would be overly burdensome.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**


**Signed:    Emmet G. Sullivan**
**United States District Judge**
**November 23, 2022**